IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLARD WILLIAMS,<br><br>      Plaintiff,<br><br>   vs.<br><br>M. GONZALEZ, R.N., et al.,<br><br>      Defendants.<br>_____ | Case No. 1:09-cv-01256 OWW JLT<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND<br><br>(Doc 1) |

**I.      Screening Order**

Plaintiff Willard Williams is a prisoner and seeks damages in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed his complaint on July 20, 2008.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been

1

paid, the Court shall dismiss the case at any time if the Court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

### A. Section 1983 complaint

Plaintiff's complaint seeks damages under 42 U.S.C. § 1983, which provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . .

42 U.S.C. § 1983. To plead a § 1983 violation, the plaintiff must allege facts from which it may be inferred that (1) plaintiff was deprived of a federal right, and (2) the person who deprived plaintiff of that right acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Collins v. Womancare, 878 F. 2d 1145, 1147 (9th Cir. 1989).

To warrant relief under § 1983, the plaintiff must allege and show that the defendants' acts or omissions caused the deprivation of the plaintiff's constitutionally protected rights. Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1993). "A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." Id. There must be an actual causal connection or link between the actions of each defendant and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Department of Social Services, 436 U.S. 658, 691-692 (1978)(citing Rizzo v. Goode, 432 U.S. 362, 370-371 (1976)).

### B. Rule 8(a)

Section 1983 complaints are governed by the notice pleading standard in Federal Rule of Civil Procedure 8(a). The complaint must give fair notice and state the elements of the plaintiff's claim plainly and succinctly. Jones v. Community Redevelopment Agency, 733 F.2d

2

646, 649 (9th Cir. 1984).

In <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009), the Court observed,

> [T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. [Citations]. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [Citation]. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." [Citation].

The Court further clarified that,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

<u>Id.</u> The Court instructed, "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. <u>Id.</u> at 1950. However, the conclusions contained in the pleading "are not entitled to the assumption of truth." <u>Id.</u>

      **C.**    **Summary of the Allegations in Complaint**

Plaintiff alleges that he is an inmate in state custody. (Doc.1 at 3) From May 9, 2008 through June 24, 2008, Plaintiff was housed at Wasco State Prison ("WSP"). <u>Id</u>. On June 24, 2008, he was transferred to the LA County jail where he remained until September 15, 2008. <u>Id.</u> On that day, he was returned to WSP where he remained until his transfer to the state prison in Soledad on October 27, 2008. <u>Id.</u> He remains incarcerated at Soledad prison.

Plaintiff claims that on June 10, 2008. He injured his right hand while moving a food cart. (Doc. 1 at 5). He was examined by Defendant Hatton, a registered nurse, and referred for further treatment at Mercy Hospital in Bakersfield. <u>Id.</u> At that time he learned that he had broken the second and third metacarpals in his right hand. <u>Id.</u> The next day, Plaintiff was examined by Dr.

3

Ugureze and referred to Dr. Lewis, an orthopedist, for a consultation. Id. On June 12, 2008, Dr. Lewis recommended surgery for the injury recommended a "Stat Authorization" to allow the surgery to proceed. Id. That same day, Plaintiff's hand was placed in a cast. Id. Despite the recommendation for surgery, no authorization was sought and Dr. Ugureze scheduled a follow-up appointment for two weeks later. Id.

Apparently aware that Plaintiff was being transferred to LA County, on June 20, 2008, Defendant Fernando, prepared Plaintiff's "health transfer information," but failed to note that Plaintiff had the fractures. (Doc. 1 at 6)  When Plaintiff arrived at LA County jail on June 24, 2008, Plaintiff alleges that "Employees and agents" were aware of his medical condition but failed to treat him. (Doc. 1 at 7) At some later time, Plaintiff filed a court action and received an order requiring Plaintiff to be examined by a doctor. Id.

After Plantiff was returned to WSP, on September 17, 2008, he saw Dr. Aye, who prescribed him medication. (Doc. 1 at 6)  On September 21, 2008, he saw Dr. Schwarz but, apparently, Dr. Schwarz, did not treat Plaintiff's hand because the medical note failed to document such treatment. Id. Plaintiff has never had the surgery recommended by Dr. Lewis and he has learned that he is no longer a candidate for surgery. Id. Plaintiff alleges that, in order to avoid permanent injury, he needed to have the surgery "immediately following the accident on June 10, 2008." Id.

**D.     The first cause of action for deliberate indifference to medical care must be dismissed as to all defendants**

Deliberate indifference to a serious medical need violates the Eighth Amendment's proscription against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97 (1976); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). "In the Ninth Circuit, the test for deliberate indifference consists of two parts." Jett, 439 F.3d at 1096. First, the plaintiff must show a serious medical need by demonstrating that failure to treat the prisoner's condition could result in further

significant injury or the unnecessary and wanton infliction of pain.[1] Jett, 439 F.3d at 1096; McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992), overruled in part on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). "Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. A prison official is "deliberately indifferent" if he actually knows that a prisoner faces a substantial risk of serious harm and disregards that risk. Farmer v. Brennan, 511 U.S. 825, 837 (1994). In other words, the second prong is satisfied by the plaintiff showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096.

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). It requires "more than ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. at 835, (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." Id. at 836. It may be shown by "the way in which prison physicians provide medical care." McGuckin, 974 F.2d at 1062 (9th Cir. 1992). Prison officials demonstrate "deliberate indifference" when they are aware of the patient's condition but "deny, delay or intentionally interfere with medical treatment." Jett, 439 F.3d at 1096.

Under the deliberate indifference standard, prison officials "must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.' Farmer, 511 U.S. at 837. 'If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk.' Gibson, 290 F.3d at 1188 (citation omitted). [Footnote] This 'subjective approach' focuses only 'on what a defendant's mental attitude

---

[1] An injury that a reasonable doctor or patient would find important and worthy of treatment, the presence of a medical condition that significantly affects a person's daily activities, or the existence of chronic and substantial pain may be indications that a prisoner has a "serious" need for medical treatment. McGuckin, 974 F.2d at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

actually was.' Farmer, 511 U.S. at 839. 'Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights. McGuckin, 974 F.2d at 1059 (alteration and citation omitted).'" Toguchi, 391 F.3d at 1057.

In Atkins v. Yates, 2009 U.S. Dist. LEXIS 53663 at * 7-9 (E.D. Cal. June 9, 2009), this Court determined that the failure to properly treat an inmate's broken finger "does not reach the level of a constitutional violation" despite that it "initiated a long sequence of pain and eventual surgery." Moreover, the medical malpractice caused the inmate to be unable to bend his without severe pain. Id. However, the Court concluded, "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)." Id.

Here, there are no facts asserted to demonstrate that any of the medical professionals acted with the requisite unconstitutional deliberation.  At most, Plaintiff alleges that the various medical professionals failed to take note of his fractures and failed to provide the surgery that he and Dr. Lewis believed were necessary. (Doc. 1 at 5) The law is clear that medical negligence and even gross medical negligence is insufficient to state a claim under the Eighth Amendment. Toguchi, supra, 391 F.3d at 1060. On the other hand, Plaintiff fails to detail the actions by each defendant that he claims violates the Eighth Amendment. Therefore, the first cause of action must be **DISMISSED**.

### 1. Defendant Hatton

Plaintiff sued Defendant Hatton but the only facts he alleges about this defendant was that this person was a registered nurse who was the first medical professional to see Plaintiff after his. (Doc. 1 at 5)  As a result of this examination, Hatton referred him for an evaluation "Code 1" at Mercy Hospital. Id.  There are no facts or inferences that can be drawn to demonstrate that Defendant Hatton's actions violated the Eighth Amendment.  Therefore, the first cause of action as to this Defendant must be **DISMISSED**.

### 2. Defendant Tay

Plaintiff alleges that Defendant Dr. Tay prescribed him pain medication and referred him for follow-up medical attention. (Doc. 1 at 5) The Court cannot conclude that this act subjects Dr. Tay to constitutional liability. Therefore, the first cause of action as to this Defendant must be **DISMISSED**.

### 3. Defendant Urgureze

Plaintiff alleges that Dr. Urgureze referred him to see an orthopedist "ASAP." (Doc. 1 at 5) The orthopedist recommended that Plaintiff undergo swift surgery and communicated this recommendation to Dr. Urgureze. Id. The next day, Dr. Urgureze determined that Plaintiff should be seen again in two weeks. Id. There are no facts alleged as to why Dr. Urgureze made this medical judgment. If the Court infers that this act by Dr. Urgureze fell below the standard of care (although there are no facts alleged upon which this Court can conclude that Dr. Lewis' medical judgment was correct and Dr. Urgureze's was not), even still, this does not state a constitutional cause of action. Differences of opinion between a prisoner and prison medical staff as to proper medical care do not give rise to a § 1983 claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.1981). Therefore, the first cause of action as to this Defendant must be **DISMISSED**.

### 4. Defendant Gonzalez

Plaintiff alleges that registered nurse Gonzalez received the recommendation from Dr. Lewis that Plaintiff undergo surgery on a "Stat" basis. (Doc. 1 at 5) He alleges also that Gonzales noted in Plaintiff's medical chart that he would be seen by a doctor the next day. Id. These acts do not state a constitutional deprivation. Therefore, the first cause of action as to this Defendant must be **DISMISSED**.

### 5. Defendant Fernando

Plaintiff alleges that registered nurse Fernando, when completing "Plaintiff's health transfer information," failed to note that Plaintiff had suffered the fractures of the metacarpals.

(Doc. 1 at 6.)  At most, this is negligence.  Therefore, the first cause of action as to this Defendant must be **DISMISSED**.

### 6. Defendant Aye

Plaintiff alleges that Defendant Dr. Aye saw Plaintiff on September 17, 2008 and noted that he needed to have x-rays taken of his hand.  He prescribed Plaintiff Naproxsyn. (Doc. 1 at 6)  On these scant fact, the Court cannot conclude that these acts were wrongful.  Therefore, the first cause of action as to this Defendant must be **DISMISSED**.

### 7. Defendant Schwarz

Plaintiff alleges that Defendant Dr. Schwarz saw Plaintiff on September 21, 2008.  (Doc. 1 at 6)  The treatment notes do not mention Plaintiff's hand.  Clearly, this is insufficient to demonstrate that Dr. Schwarz committed a constitutional deprivation.  Therefore, the first cause of action as to this Defendant must be **DISMISSED**.

### 8. Defendant Los Angeles County

In order to state a claim under Monell, the pleading must demonstrate that a custom or policy of the entity caused the violation of Plaintiff's federally protected rights. Monell, 436 U.S. at 694.  A plaintiff seeking to establish municipal liability under § 1983 may do so in one of three ways: 1) the plaintiff may demonstrate that a municipal employee committed the alleged constitutional violation "pursuant to a formal governmental policy or longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity;" 2) the plaintiff may demonstrate that the person who committed the constitutional violation "was an official with final policy-making authority and that the challenged action itself thus  constituted an act of official government policy;" or 3) the plaintiff may demonstrate that "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).

Here, Plaintiff alleges that LA failed to have a policy related to providing medical care to inmates being transferred to its custody.  (Doc. 1 at 7)  Plaintiff asserts also that LA County

failed to train its employees to "identify inmates in need of immediate care." Id.  These factual allegations fall well short of the pleading requirements.  Plaintiff was required to identify the longstanding custom or the unconstitutional conduct that was condoned by an LA County official with policy-making authority, that the custom or policy was deliberately followed for the purpose of causing him harm and that the custom or policy actually caused him constitutional injury.

Plaintiff's legal conclusions that, "The denial of timely and acceptable treatment demonstrates a deliberate indifference by each Defendant towards Plaintiff and constitutes cruel and unusual punishment in violation of Plaintiff's Eighth Amendment Rights" (Doc 1 at7) and that "The denial of timely and acceptable treatment demonstrates a deliberate indifference by each Defendant towards Plaintiff and constitutes cruel and unusual punishment in violation of Plaintiff's Eighth Amendment Rights" (Doc. 1 at 8), provide little assistance and fail to meet Plaintiff's obligation to provide a plausible, factual basis–rather than mere conclusion–for his claims.  Iqbal, 129 S.Ct. at 1949.  Therefore, the first cause of action as to this Defendant must be **DISMISSED**.

  **E. The second cause of action for LA County's failure to train medical staff must be dismissed**

The "inadequacy of [ ] training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [governmental employees] come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989).  The failure to train must reflect a "deliberate or conscious choice by a municipality" for the city to be liable for its failure under § 1983.  Id.  For example, "the need to train officers in the constitutional limitations on the use of deadly force, can be said to be so obvious that the failure to do so could be characterized as deliberate indifference to constitutional rights." Id. at 390, n. 10 (internal quotation marks and citation omitted).

Although styled as a failure to establish a policy regarding training of medical professionals, Monell liability is founded upon the premise that an official policy or custom

caused constitutional harm. Monell, 436 U.S. at 694. Thus, it appears that Plaintiff is alleging that Los Angeles County had a custom, or a standard operating procedure, of failing to determine whether inmates received from another institution entered the LA facility with medical needs that required treatment. To state a Monell claim on this basis, Plaintiff is obligated to,

> (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury was likely to occur.

Young v. City of Visalia, 687 F. Supp. 2d 1155, 1163 (E.D. Cal. 2010).

It appears that Plaintiff's skimpy factual allegations sufficiently identify the custom and outline its deficiency. However, he does not plead facts to support that the custom caused his harm or that the custom amounted to a deliberate indifference to his constitutional rights. To the contrary, his factual allegations belie this claim.

For example, Plaintiff alleges, "Employees and agents of Los Angeles County **were aware** of plaintiff's medical needs upon his arrival." (Doc. 1 at 7) He then incorporates this allegation into his second cause of action. Therefore, this allegation – that the employees were *fully aware* of his medical needs but failed to provide medical attention–completely contradicts Plaintiff's conclusion that an unconstitutional custom of failing to screen received inmates for medical needs, caused his harm. Therefore, the second cause of action must be **DISMISSED**.

### F. The third cause of action for LA County's failure to implement policies related to treatment of inmates received from another institution.

Plaintiff entitles his third cause of action as "Failure to Implement Policies." (Doc. 1 at 9) However, Plaintiff alleges that LA County, in fact, maintained a policy of denying inmates medical care. Id. Then, he alleges that LA County "failed to implement necessary policies in the event an inmate requiring urgent medical care is received from another agency." As noted above, Monell liability is founded upon the entity's action in maintaining an unconstitutional policy or custom that caused constitutional harm. Monell, 436 U.S. at 694. Thus, the Court concludes that


...

in this cause of action, Plaintiff is complaining that LA County failed to have a policy that guided employees as to their duties if an inmate is received who has need of urgent medical care.  Thus, as in the first cause of action, it appears that Plaintiff is alleging that Los Angeles County had a custom of failing to provide received inmates with medical treatment for acute conditions.

Once again, Young v. City of Visalia, 687 F.Supp.2d at 1163 describes Plaintiff's obligations in stating a Monell claim.  Because this is a restatement of Plaintiff's first cause of action, this cause of action is deficient for the same reasons set forth above.   Therefore, the second cause of action must be **DISMISSED**.

    **G.**    **The fourth cause of action for negligence must be dismissed.**

Plaintiff alleges that each defendant may be held liable for negligence under California Government Code section 844.6.  This section reads in relevant part,

> (a) Notwithstanding any other provision of this part, except as provided in this section and in Sections . . . 845.6 . . ., a public entity is not liable for:
> [¶]
> (2) An injury to any prisoner.
> [¶]
>
> (d) Nothing in this section exonerates a public employee from liability for injury proximately caused by his negligent or wrongful act or omission. The public entity may but is not required to pay any judgment, compromise or settlement, or may but is not required to indemnify any public employee, in any case where the public entity is immune from liability under this section; except that the public entity shall pay, as provided in Article 4 (commencing with Section 825) of Chapter 1 of this part, any judgment based on a claim against a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state for malpractice arising from an act or omission in the scope of his employment, and shall pay any compromise or settlement of a claim or action, based on such malpractice, to which the public entity has agreed.

A plain reading of this statute indicates that it is not a source of liability but is an immunity from liability.  Ne Casek v. Los Angeles, 233 Cal.App.2d 131, 140 (Cal. App. 2d Dist. 1965) ("Government Code, section 844.6, subdivision (d), does not create a liability. It simply negates exoneration by that section of liabilities otherwise created.") Therefore, this cause of action as to all defendants must be **DISMISSED**.

    **1.**    **The County of Los Angeles may not be held liable for negligence**

**under California Government Code § 844.6**

The purpose of the California Government Claims Act is to limit governmental liability to "rigidly delineated circumstances." Zelig v. County of Los Angeles, 27 Cal.4th 1112, 1127 (Cal. App. 2d Dist. 2002). By its terms, § 844.6 will not impose liability on the County of Los Angeles. This section reads, "a public entity is not liable for . . . An injury to any prisoner." Moreover, public entities are not vicariously liable for the medical negligence of their employees. In Flores v. Natividad Medical Ctr., 192 Cal.App.3d 1106, 1115 (Cal. App. 1st Dist. 1987), the court held, " It is clear that the State is not vicariously liable for the medical malpractice of its employees. [Citation] Although the State is required to pay the judgment assessed against its employees for medical malpractice committed against a prisoner, the State is immune from suit directly." (Citation omitted.) Therefore, because the County of Los Angeles may not be held liable under this statute, this cause of action must be **DISMISSED**.

### H.     The fifth cause of action for medical negligence must be dismissed except as to Dr. Urgureze

#### 1.     Defendant Tay

Plaintiff alleges that Defendant Dr. Tay prescribed him pain medication and referred him for follow-up medical attention. (Doc. 1 at 5) There are no facts alleged that when Dr. Tay saw Plantiff, additional or different medical treatment was required according to the standard of care. Therefore, this cause of action as to this Defendant must be **DISMISSED**.

#### 2.     Defendant Urgureze

Plaintiff alleges that Dr. Urgureze referred him to see the orthopedist "ASAP". (Doc. 1 at 5) The orthopedist recommended that Plaintiff undergo swift surgery and communicated this recommendation to Dr. Urgureze. Id. For unknown reasons, the next day, Dr. Urgureze determined that Plaintiff should be seen again in two weeks, rather than have the surgery. Id. There are no facts alleged as to why Dr. Urgureze made this medical judgment. Nevertheless, these facts are sufficient to support an inference that Dr. Urgureze's treatment of Plaintiff fell

below the standard of care. Therefore, Plaintiff has stated a cognizable claim as to this Defendant as to this cause.

### 3. Defendant Aye

Plaintiff alleges that Defendant Dr. Aye saw Plaintiff on September 17, 2008 and noted that he needed to have x-rays taken of his hand.  He prescribed Plaintiff Naproxsyn. (Doc. 1 at 6) There are no facts alleged that the standard of care required Dr. Aye to take different action or that he should have provided different care, despite not having x-ray films to examine. There are no facts alleged that Dr. Aye failed to order the x-rays.  Therefore, this cause of action as to this Defendant must be **DISMISSED**.

### 4. Defendant Schwarz

Plaintiff alleges that Defendant Dr. Schwarz saw Plaintiff on September 21, 2008.  (Doc. 1 at 6) The treatment notes do not mention Plaintiff's hand.  This is insufficient to demonstrate that Dr. Schwarz committed a constitutional deprivation. There are no facts alleged regarding why Dr. Schwarz saw Plaintiff such to allow the Court to draw the conclusion that the treatment notes should have mentioned Plaintiff's hand.  Therefore, this cause of action as to this Defendant must be **DISMISSED**.

## I. The sixth cause of action under California Government Code section 845.6 must be dismissed except as to Dr. Urgureze

California Government Code section 845.6 provides,

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, **a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.** Nothing in this section exonerates a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state from liability for injury proximately caused by malpractice or exonerates the public entity from its obligation to pay any judgment, compromise, or settlement that it is required to pay under subdivision (d) of Section 844.6.

(Emphasis added.)

### 1. The cause of action as to the County of Los Angeles must be dismissed

Plaintiff asserts that the County of Los Angeles should be held liable for its failure to summon medical care for Plaintiff. He asserts that County's employees "were aware of his medical needs upon his arrival" at the county jail. (Doc. 1 at 7) To the contrary, Plaintiff attempts to impose liability on Defendant Fernando because this nurse, when preparing his health information upon his transfer to the LA County jail, failed "to provide any information concerning Plaintiff's broken right hand."[2] Therefore, it is unclear whether this defendant was aware or was not aware of Plaintiff's injury. On the other hand, Plaintiff does not plead these facts in the alternative. Therefore, the cause of action is vague and ambiguous as to the County of Los Angeles.

On the other hand, there are no facts plead to support that Plaintiff continued to be in need of "immediate" medical care when he arrived at the LA County jail. At his arrival, he was two weeks, post-injury. (Doc. 1 at 3) Plaintiff alleges that he was in need of surgery "immediately" after he suffered the injury on June 10, 2008. (Doc. 1 at 6) There are no facts alleged that by June 24, 2008, he continued to need "immediate" care.

Therefore, due to the ambiguity noted above and the failure to allege sufficient facts that Plaintiff continued to be in need of immediate care on June 24, 2008 when he entered the LA County facility, the cause of action as to LA County must be **DISMISSED**.[3,4]

---

[2] The Court notes that Plaintiff refers variously to his injury as a "broken right hand" and fractures of the second and third metacarpals, which are small bone of the fingers. The Court presumes, despite the inconsistent descriptions given, that Plaintiff is referring to the same injury.

[3] In addition, the Court is concerned that Plaintiff has failed to satisfy the requirements of California Government Code § 946.5. Although the motion to dismiss was denied to allow this screening order, the documents filed by Plaintiff in opposition to that motion, contained a letter in which he sought the LA County Board of Supervisors permission to file a late governmental claim. The results of this request are not known. If LA County refused this request, Plaintiff was required to seek relief from the claims-filing requirement from the Court according to California Government Code section 946.6. This is a pre-requisite to filing suit. Janis v. California State Lottery, 68 Cal.App.4th 824, 832 (1998) ("Pursuant to the Government Code, any party with a claim against a public entity must *first* present the claim to the entity; only if the governmental claim is denied or rejected may the claimant then institute civil litigation.") His failure to take this action if, indeed, he failed in this regard, would preclude the litigation against the County of LA on any state

### 2. Defendant Hatton

Plaintiff failed to identify any wrongful action taken by Defendant Hatton and there are no reasonable inferences that may be drawn to demonstrate that Defendant Hatton may be held liable under § 845.6. To the contrary, Defendant Hatton referred Plaintiff Mercy Hospital and he was seen there soon thereafter. Thus, for the same reasons discussed as to the First Cause of Action, this cause of action as to this Defendant must be **DISMISSED**.

### 3. Defendant Tay

Plaintiff alleges that Defendant Dr. Tay prescribed him pain medication and referred him for follow-up medical attention. (Doc. 1 at 5) These facts are insufficient to demonstrate that Dr. Tay's actions were tortious such to impose liability under § 845.6. Therefore, this cause of action as to this Defendant must be **DISMISSED**.

### 4. Defendant Urgureze

Plaintiff alleges that Dr. Urgureze referred him to see the orthopedist "ASAP". (Doc. 1 at 5) The orthopedist recommended that Plaintiff undergo swift surgery and communicated this recommendation to Dr. Urgureze. Id. For unknown reasons, the next day, Dr. Urgureze determined that Plaintiff should be seen again in two weeks, rather than have the surgery. Id. There are no facts alleged as to why Dr. Urgureze made this medical judgment. These facts are sufficient to support an inference that Dr. Urgureze knew that Plaintiff was in need of immediate medical attention and failed to provide it. Therefore, Plaintiff has stated a cognizable claim as to this Defendant as to this cause.

### 5. Defendant Gonzalez

As noted above, Plaintiff alleges that registered nurse Gonzalez received the

---

law claims. However, because this evidence is not before the Court in this screening order, the Court notes it would behoove Plaintiff to address this issue in any amended complaint.

[4] In addition, the evidence presented by Defendant LA County in support of its motion to dismiss raises the probability that Plaintiff failed to comply with the PLRA. Clearly, his failure to do so would bar his litigation, in full, against the County of LA.

recommendation from Dr. Lewis that Plaintiff undergo surgery on a "Stat" basis. (Doc. 1 at 5) He alleges also that Gonzales noted in Plaintiff's medical chart that he would be seen by a doctor the next day. Id. However, there are no facts alleged that would support that the nurse, rather than the treating doctor, had any authority to dictate the medical treatment that Plaintiff would receive or that the nurse had the training necessary to determine that Dr. Lewis' planned course of treatment was superior to Dr. Urgureze's. Therefore, there are insufficient facts plead that this Defendant knew or had reason to know that Plaintiff had need of immediate medical attention. Thus, this cause of action as to this Defendant must be **DISMISSED**.

### 6. Defendant Fernando

Plaintiff alleges that registered nurse Fernando, when completing "Plaintiff's health transfer information," failed to note that Plaintiff had suffered the fractures of the metacarpals. (Doc. 1 at 6) Assuming that Defendant Fernando had a duty to provide this information on this transfer form (although this is not alleged), this implies that Plaintiff was deprived of medical care at the LA County jail because the jailers were unaware of his medical need. However, "Liability of public entities and public employees under Government Code section 845.6 is limited to serious and obvious medical conditions requiring immediate care. [Citation] Their duty to provide medical care to prisoners is limited to '". . . cases where there is actual or constructive knowledge that the prisoner is in need of immediate medical care.'" [Citation] The public employee must know or have reason to know of the need of immediate medical care and fail to summon such care. [Citation]." Lucas v. County of Los Angeles, 47 Cal.App.4th 277, 288 (Cal. App. 2d Dist. 1996).

There are no facts alleged that Defendant Fernando knew that Plaintiff was in need of immediate medical attention. Thus, this cause of action as to this Defendant must be **DISMISSED**.

### 7. Defendant Aye

Plaintiff alleges that Defendant Dr. Aye saw Plaintiff on September 17, 2008 and noted

that he needed to have x-rays taken of his hand. (Doc. 1 at 6) He prescribed Plaintiff Naproxsyn. Id. There are no facts to indicate that Dr. Aye knew or had reason to know that Plaintiff was in need of immediate medical attention, if he was at that time. Thus, the facts are insufficient to subject Dr. Aye to liability under § 845.6. Therefore, this cause of action as to this Defendant must be **DISMISSED**.

### 8. Defendant Schwarz

Plaintiff alleges that Defendant Dr. Schwarz saw Plaintiff on September 21, 2008. (Doc. 1 at 6) The treatment notes do not mention Plaintiff's hand. There are no facts alleged regarding why Dr. Schwarz saw Plaintiff such to allow the Court to draw the conclusion that the treatment notes should have mentioned Plaintiff's fingers. Moreover, there are no facts alleged to support that Dr. Schwarz knew or should have known that Plaintiff was in need of immediate medical attention, if he was at that time. Therefore, this cause of action as to this Defendant must be **DISMISSED**.

### J.   The seventh cause of action for injunctive relief is moot

In his seventh cause of action, Plaintiff seeks an order of the Court requiring that the Defendants provide Plaintiff prompt medical care. Toward this end, Plaintiff claims that the wrongful actions alleged were pursuant to policies of the State of California and the County of Los Angeles.

First, Plaintiff has named the State employees only in their individual capacities. Thus, the policies of the State of California's Department of Corrections and Rehabilitation are not at issue. Second, Plaintiff admits that he is no longer in the care, custody or control of any of the defendants. (Doc. 1 at 3) He does not allege that he has any reasonable expectation that he will be returned to the custody of the County of Los Angeles or placed in a position to need medical treatment from any of the defendants.[5]

---

[5]Notably, WSP is a receiving facility. Thus, Plaintiff will not be returned to WSP unless he is released from custody and re-offends.

1    In <u>Flowers v. Ahern</u>, 650 F.Supp.2d 988, 990-991 (N.D. Cal. 2009), the inmate sued, in
2 part, for injunctive relief, for the conditions of his confinement in the facility (including the
3 deliberate indifference to his medical care) where he was housed previously.  In considering
4 whether the request for injunction relief survived his transfer to the new facility, the Court held,

> When an inmate has been transferred to another prison and there is no reasonable expectation nor demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, the claim for injunctive relief should be dismissed as moot. [Citation]. A claim that the inmate might be re-transferred to the prison where the injury occurred is too speculative to overcome mootness. [Citation.].

The Court relied upon <u>Dilley v. Gunn</u>, 64 F.3d 1365, 1368 (9th Cir. 1995), in which the Ninth Circuit determined that, "An inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action."  Because the claim for injunctive relief is moot, the seventh cause of action must be **DISMISSED**.

      **K.**     **The request for punitive damages against the County of LA is improper.**

Punitive damages may not be awarded against municipalities in § 1983 actions. <u>Newport v. Fact Concerts</u>, 453 U.S. 247, 271 (U.S. 1981) ("[A] municipality is immune from punitive damages under 42 U. S. C. § 1983."); <u>Demoura v. Ford</u>, 2010 U.S. Dist. LEXIS 66680 at *13 (E.D. Cal. July 2, 2010) ("While punitive damages are available in actions against a local government official in his or her personal capacity, they are not available in action against municipality under 42 U.S.C. § 1983.")

Similarly, the California Government Claims Act prohibits an award of punitive damages for claims raised under the Act.  California Government Code section 818 reads, "Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant."

Therefore, the prayer for punitive damages against the County of Los Angeles is improper

and must be dismissed.

### III. Conclusion

The Court must dismiss Plaintiff's complaint for the reasons outlined in the body of this order. The Court will grant Plaintiff an opportunity to file an amended complaint to address the deficiencies, if he is able. Plaintiff is informed that the Court cannot refer to a prior pleading to make the amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This is because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once Plaintiff files an amended complaint, the original pleading no longer serves any function in the case.

Accordingly, IT IS ORDERED that:

1. The Complaint is **DISMISSED WITH LEAVE TO AMEND**; and

3. Plaintiff is **GRANTED** 20 days from the date of service of this order to file an amended complaint. The amended complaint must reference the docket number assigned to this case and must be labeled "First Amended Complaint." Failure to file an amended complaint in accordance with this order will result in a recommendation that this action be dismissed pursuant to Local Rule 110.

**Plaintiff is admonished that he must strictly comply with the requirements for filing a timely "First Amended Complaint." Also, Plaintiff is advised that he must address the deficiencies noted in this order and he must file only non-frivolous claims against appropriate defendants. If he fails to comply with this order, the Court will recommend dismissal of this action with prejudice.**

IT IS SO ORDERED.

Dated:   **September 29, 2010**           /s/ Jennifer L. Thurston
                                    UNITED STATES MAGISTRATE JUDGE